IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAPITOL CITY CONSTRUCTION, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:10-cv-00780 |
| | ) Judge Trauger |
| SUNTRUST MORTGAGE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the court is the Motion to Dismiss filed by defendant SunTrust Mortgage, Inc. (Docket No. 5), to which the plaintiff has filed a response (Docket No. 11), and in support of which the defendant has filed a reply (Docket No. 12). For the reasons discussed below, the defendant's motion will be granted.

## BACKGROUND

This litigation concerns Lot 195 of the Five Oaks subdivision in Wilson County, Tennessee ("Lot 195"), which, before the events at issue, was owned by plaintiff Capitol City Construction, LLC ("Capitol City").[1] Capitol City's principal member, Dan Carlyle, teamed with business partner Bryan Puckett to form CP Construction, LLC, which built homes on Capitol City's lots. Capitol City alleges that Puckett fraudulently conveyed Lot 195 to one of his other companies and then sold the property for his own benefit. The defendant, SunTrust

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiff's Complaint (Docket No. 1, Ex. 1).

1

Mortgage, Inc. ("SunTrust"), provided a mortgage loan to the ultimate purchasers and now holds title to Lot 195.

Puckett allegedly borrowed over $450,000 from Carlyle's line of credit at SunTrust Bank to build a house on Lot 195. On September 4, 2007, Puckett executed a quitclaim deed, transferring Lot 195 from Capitol City to his company, P-1 Enterprises, LLC ("P-1"), for a purchase price of ten dollars. The plaintiff alleges that Puckett had no authority to do this. That same day, Puckett, as president of P-1, executed a warranty deed transferring Lot 195 to James and Patricia Snyder, who are his in-laws. The Snyders paid P-1 approximately $650,000 for the property. The purchase was funded by a mortgage loan from SunTrust, and the Snyders simultaneously executed a deed of trust to SunTrust to secure the indebtedness.[2]

The plaintiff alleges that SunTrust knew that Carlyle was not a member of P-1. It further alleges that the closing attorney wired $100,000 of the purchase price to Puckett's personal bank account and wired the remaining $550,000 to P-1's account. The payment to Puckett was not reflected on the HUD-1 settlement statement for the transaction.

SunTrust has submitted a "unanimous consent" document from Capitol City that Puckett presented during the mortgage transaction (the "Authorization"). Although the plaintiff alleges that Puckett was never a member of Capitol City, the Authorization states that Carlyle and Puckett "are the only members of Capitol City." (Docket No. 5, Ex. 1.) It further provides that Capitol City "is authorized and empowered to convey all owned real property to another party"

---

[2] The plaintiff does not allege that SunTrust knew that the Snyders were Puckett's in-laws.

2

and that Puckett is "authorized and empowered to execute, acknowledge, and deliver any and all documentation required in connection with the conveyance of said owned property." (*Id.*) The Authorization is signed by Carlyle and is dated September 4, 2007.

The plaintiff has filed this suit to quiet the defendant's title to Lot 195. It initially filed suit in Tennessee state court, and the defendant removed to this court on diversity grounds.

## ANALYSIS

The defendant has now filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Motion to Dismiss Standard

The Federal Rules of Civil Procedure require plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed R. Civ. P. 8(a)(2), and Rule 12(b)(6) allows a defendant to move to dismiss on the grounds that the plaintiff has failed to state a claim. In deciding a Rule 12(b)(6) motion, the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must assume that all of the factual allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In contrast, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Twombly*,

3

550 U.S. at 555. "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555, 556 n.3. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## II. SunTrust's Notice of Puckett's Alleged Wrongdoing

The plaintiff claims that Puckett's actions amounted to theft. It alleges that SunTrust had notice that Puckett's transactions were fraudulent, and it seeks to have the court equitably restore Capitol City's interest in Lot 195. (Docket No. 11 at 5-6 (citing *Shelby Elec. Co. v. Forbes*, 205 S.W.3d 448, 455 (Tenn. Ct. App. 2005).) The defendant argues that SunTrust was a bona fide purchaser without notice of any fraud.[3] (Docket No. 6 at 7-13.)

As an initial matter, Puckett had, at a minimum, ostensible authority from Capitol City to transfer Lot 195 to P-1. "'An agent's authority is composed of his actual authority, express or implied, together with the apparent or ostensible authority which the principal by his conduct precludes himself from denying.'" *Milliken Group, Inc. v. Hays Nissan*, Inc., 86 S.W.3d 564, 567 (Tenn. Ct. App. 2001) (quoting 2A C.J.S. *Agency* § 146 (1972)). "If a principal has cloaked

---

[3] Tennessee is a title-theory jurisdiction, which means that "a mortgage vests the mortgagee with the legal title to the land." *Howell v. Tomlinson*, 228 S.W.2d 112, 116 (Tenn. Ct. App. 1949); *Te-Two Real Estate Ltd. Partnership v. Creekstone Apartments Assocs., L.P. (In re Creekstone Apartments Assocs., L.P.)*, 1995 U.S. Dist. LEXIS 14876, at *23 (M.D. Tenn. Sept. 18, 1995). Thus, SunTrust, not the Snyders, currently has title to Lot 195.

4

an agent with apparent authority, then the principal is liable when the agent exercises that authority." *Id.* at 570. "'So far as concerns a third person dealing with an agent, the agent's 'scope of authority' includes not only the actual authorization conferred upon the agent by the principal, but also that which has apparently been delegated to him.'" *Id.* (quoting 3 Am. Jur. 2d *Agency* § 78 (1986)).

The plaintiff denies that Puckett was actually authorized to transfer Lot 195 to P-1, but the unanimous consent executed by Snyder provided broadly that Puckett was "authorized and empowered to execute . . . any and all documentation required in connection with" a conveyance of Capitol City's real property.[4] (Docket No. 5, Ex. 1.) The plaintiff does not challenge the authenticity of the Authorization. (*See* Docket No. 11 at 10 ("Although Mr. Carlyle does not recall signing the authorization, he has no way of disputing it.").) That document is sufficient to give Puckett ostensible, if not actual, authority to transfer Lot 195. *See Hindman v. Moore*, No. E2005-01287-COA-R3-CV, 2006 Tenn. App. LEXIS 339, at *13-15 (Tenn. Ct. App. May 23, 2006) (binding the plaintiff principal when her son, who had power of attorney, had apparent authority to execute a deed).

The defendant argues that it was a bona fide purchaser because it relied on the Authorization. "A bona fide purchaser is 'one who buys for a valuable consideration without

---

[4] The defendant argues that the court may consider the Authorization at the motion-to-dismiss stage because the document is referenced in the Complaint and is central to the plaintiff's claim. (Docket No. 6 at 3 n.2 (citing *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999)). The plaintiff disagrees that the Authorization is central to its claim but nevertheless states that it has no objection to the court's consideration of the document. (Docket No. 11 at 10 n.3.) Because the plaintiff has no objection, the court will consider the Authorization.

knowledge or notice of facts material to the title.'" *Anderson Props. v. Inman*, No. 01-A-01-9503-CH-00084, 1995 Tenn. App. LEXIS 556, at *7 (Tenn. Ct. App. Aug. 25, 1995) (quoting *Henderson v. Lawrence*, 369 S.W.2d 553, 556 (Tenn. 1963)); see also *Rogers v. First Nat'l Bank*, No. M2004-02414-COA-R3-CV, 2006 Tenn. App. LEXIS 97, at *37 (Tenn. Ct. App. Feb. 14, 2006). The plaintiff does not argue that its interest in Lot 195 can prevail over a subsequent bona fide purchaser.

The parties' dispute thus boils down to whether the circumstances of the transaction gave SunTrust constructive notice that Puckett was misappropriating Capitol City's property. The plaintiff cites *Estate of Darnell v. Fenn*, 303 S.W.3d 269 (Tenn. Ct. App. 2009), which explained the concept of constructive, or inquiry, notice:

> Notice of a prior interest which will be effective to charge a subsequent purchaser with knowledge of its existence may be either direct information of the prior right, or may consist of information of facts from which actual knowledge may be inferred; the notice need not be actual, but may be constructive or implied. . . . When anything appears which would put a man of ordinary prudence upon inquiry, the law presumes that such inquiry was actually made, and therefore fixes the notice upon him as to all legal consequences.

*Id.* at 279. Capitol City argues that the circumstances here would have given "a man of ordinary prudence" inquiry notice of Puckett's alleged wrongdoing.

Specifically, the plaintiff argues that the following circumstances should have raised SunTrust's suspicions: (1) Puckett transferred Lot 195 from Capitol City to P-1 via quitclaim deed for only nominal consideration; (2) Capitol City did not specifically authorize that particular transfer; (3) Carlyle was not a member of P-1; (4) if Puckett was a member of Capitol

6

City, as stated in the Authorization, then the transfer to P-1 would have been a conflict-of-interest transaction; (5) the transfer to P-1 was executed the same day as the transfer from P-1 to the Snyders; and (6) $100,000 of the Snyders' funds was wired to Puckett's personal account, a fact that was not reflected on the settlement statement for the mortgage transaction. (Docket No. 11 at 8-9.)

The plaintiff is correct that the circumstances of Puckett's transfer of Lot 195 from Capitol City to P-1 might be sufficient to raise questions regarding Puckett's authority to execute the transaction. But Puckett presented SunTrust with an Authorization, which was signed that same day by Carlyle, broadly allowing Puckett to transfer any and all of Capitol City's real property. The plaintiff argues that "[t]he only reasonable inquiry" in that situation "would have been to ask Mr. Carlyle if the quitclaim was authorized." (Docket No. 11 at 9.) The court disagrees. Receipt of the Authorization was sufficient to discharge the defendant's duty to investigate the issue of Puckett's authority. SunTrust was not required to make further inquiries, and the plaintiff has not presented any precedent to the contrary.

The remaining circumstances are not enough to imply that Puckett was effectively stealing Lot 195. The fact that the quitclaim deed to P-1 only reflected a purchase price of ten dollars does not imply wrongdoing; it is easy to imagine reasons why related companies would transfer real property between themselves for nominal consideration.[5] Nor is it unusual for

---

[5] For example, P-1 might have had a contract with Capitol City to take title to the property, sell it to a third party, and pay Capitol City a percentage of the ultimate purchase price. In fact, according to the Complaint, Capitol City did rely on a separate company, CP Construction, LLC, to "negotiat[e] . . . home sales and . . . execut[e] . . . all documents necessary to accomplish such sales." (Docket No. 1, Ex. 1 ¶ 6.)

7

companies with overlapping ownership to transact business. The mere fact that Carlyle was not an owner of P-1 does not indicate that Carlyle would ultimately receive nothing for the property. And even though Puckett received some of the purchase money in a personal account, the majority of the funds were wired to P-1's company account.[6] Taking everything together, there was simply not enough to place SunTrust on notice that Puckett was acting fraudulently.

The plaintiff makes much of the fact that the property was transferred from Capitol City to P-1 via quitclaim deed. (*See* Docket No. 11 at 8 ("In most jurisdictions, it is held that the existence of a quitclaim is sufficient to put a subsequent purchaser on inquiry notice.").) But Tennessee case law is clear that "a grantee in a quitclaim deed can[] be an innocent purchaser." *Bowman v. Midstate Fin. Co.*, No. 01-A-01-9808-CH-00424, 1999 Tenn. App. LEXIS 235 (Tenn. Ct. App. Apr. 16, 1999). "[A] grantee of a quitclaim deed 'will be regarded as a purchaser in good faith notwithstanding such quitclaim deed, if his title as shown by the registry record, is apparently valid and clear, and he has no notice of any defect in the title.'" *Id.* (quoting *Campbell v. Home Ice & Coal Co.*, 126 Tenn. 524, 534 (Tenn. 1912)). In any event, in other jurisdictions, the recipient of a quitclaim deed is on notice that some third party might have an interest in the land – not that the grantor itself is being defrauded by its own agent. *See, e.g.*,

---

[6] In addition, these actions were performed by the closing attorney. The defendant argues that, in addition to jointly representing P-1, the Snyders, and SunTrust, the attorney represented Capitol City (*see* Docket No. 12 at 3), presumably because the attorney was responsible for recording the quitclaim deed. SunTrust argues that, under Tennessee law, "one principal (i.e., Capitol City) cannot sue another principal (i.e., SunTrust Mortgage) on the basis of knowledge or actions imputed through a common agent." (*Id.* (citing *Smith Mech. Contrs., Inc. v. Premier Hotel Dev. Group*, 210 S.W.3d 557, 562 (Tenn. Ct. App. 2006).) It is unnecessary for the court to reach this argument, however.

*Martinez v. Affordable Hous. Network, Inc.*, 123 P.3d 1201, 1208 (Colo. 2005) (noting that "an element of risk is imposed upon the buyer that would not otherwise be present if the conveyance were by warranty deed," because "a quitclaim deed does not convey title but only that interest that the grantor has to convey"). Here, there is no question that, before Puckett's transfers, Capitol City held full title to Lot 195.

In sum, the plaintiff has not alleged facts sufficient to plausibly show that SunTrust had constructive notice of Puckett's wrongdoing. *See Twombly*, 550 U.S. at 555-56. Accordingly, the court will dismiss the plaintiff's claim.

## **CONCLUSION**

For all of the reasons discussed above, the court will grant the defendant's Motion to Dismiss.

An appropriate order will enter.

 _____
 ALETA A. TRAUGER
 United States District Judge